IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM BITTERS** | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 21-87** |
| | : | |
| **NATIONWIDE GENERAL** | : | |
| **INSURANCE COMPANY** | : | |

**McHUGH, J.**                                                                                                                 **November 30, 2021**

**MEMORANDUM**

This case involves a dispute between an insurance carrier and an insured over denial of a claim. The issue is whether damage to the insured's home qualifies as a "collapse" covered by the insurance policy. The carrier has moved for summary judgment. The motion will be denied, because there are genuine disputes of material fact as to whether the policy's additional coverage for collapse applies.

**I.**     **Factual and Procedural Background**

Plaintiff William Bitters is a homeowner who alleges he "suffered a sudden and accidental direct physical loss" to his house "caused by collapse due to hidden insect damage" to the foundational structure. Pl.'s Compl., ECF 13-4, Ex. A ¶5. Mr. Bitters reports that he came home to find the floor of the southwest bedroom in his home collapsed down to the cement slab below. Bitters Dep. 26:9-14; 27:4-13, ECF 15, Ex. 1. He took steps to mitigate, jacking up the floor and adding additional wood supports. Bitters Dep. 29:17-24, 30:1-5; Def.'s Mot. Summ. J., ECF 13-2 at 2. Mr. Bitters then filed a claim for the loss with defendant insurer Nationwide General Insurance Company ("Nationwide").[1] After investigating the loss, Nationwide decided that there

---

[1] At all relevant times, Mr. Bitters maintained homeowner's insurance through Nationwide. Def.'s Mot. Summ. J., ECF 13 ¶4.

was no coverage for the loss under Mr. Bitter's Policy and denied coverage. Letter of Denial, ECF 13-7, Ex. D. This action followed.

II. **Standard of Review**

This Motion is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986).

III. **Discussion:**

    a. Language of the Insurance Policy

Because this is a diversity action, Pennsylvania substantive law applies in construing the language of the insurance policy. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 81 (1938). In Pennsylvania, terms that are "clear and unambiguous" should be given "their plain and ordinary meaning, unless they violate a clearly established public policy." *Kurach v. Truck Ins. Exch.,* 235 A.3d 1106, 1116 (Pa. 2020). "Conversely, when a provision of a policy is ambiguous, the policy provision is to be construed in favor of the policyholder and against the insurer, as the insurer drafted the policy and selected the language which was used therein." *Id.* Terms are ambiguous "if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Construction Company v. Harleysville Mutual Insurance Company,* 735 A.2d 100, 106 (Pa. 1999).

At issue is whether the "Additional Property Coverage" for collapse, set forth in Section I of the policy, titled "Property Coverages" is applicable to the instant loss. The Additional Coverage policy defines collapse as:

> We cover direct physical loss to covered property described in Coverages A, B and C caused by the complete collapse of a building structure or any part of a building structure. Collapse means an abrupt falling down or caving in of a building or other structure or any part of a building or other structure with the result that it cannot be

> occupied for its intended purpose. A building or other structure or part of a building or other structure is not considered in a state of collapse if:
> - a) it is standing but in danger of falling down or caving in;
> - b) it is standing but has separated from any other part of the building;
> - c) it is standing even if it shows signs of settling, cracking, shifting, bulging, sagging, bowing, bending, leaning, shrinkage, or expansion.
>
> The collapse must be sudden and accidental and caused by one or more of the following:
> a) one of the Coverage C — Personal property Perils insured against;
> b) hidden decay of a supporting or weight bearing building structural member;
> c) hidden insect or vermin damage of a supporting or weight bearing building structural member;
> d) weight of:
> > contents, equipment, animals or people;
> > or rain, ice, sleet or snow which collects on the roof; or
>
> e) defective material or methods used in the construction, repair or remodeling or renovation if the collapse occurs in the course of work being done.
>
> The presence of any decay, insect or vermin damage must be unknown to an insured prior to collapse.

Additional Property Coverages ¶ 12, ECF 13-5 at 17. Later in the policy, in Section I—Property Exclusions, the policy states, "We do not cover loss to any property resulting directly or indirectly from. . . collapse, except as provided by Section I—Additional property coverages—Collapse." ¶1(i), ECF 13-5 at 22.

In Nationwide's view, because "Plaintiff did not suffer a 'collapse,' the additional coverage for 'collapse' is not triggered and his damages are excluded under the terms and conditions of the Policy." Def.'s Mot. Summ. J., ECF 13 ¶ 34. Bitters alleges that his loss is covered, as he suffered a "sudden and accidental loss" to the insured premises caused by "hidden insect damage of a supporting or weight bearing building structural member," which is covered by the policy. Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., ECF 15 at 1.

b. The Burden of Proof is on the Insurer

The parties dispute the applicable burden of proof under this policy. In an insurance coverage case, the insured first bears the burden of proving that the damages claimed fall within the scope of coverage accorded by the policy. *See Koppers Co. v. Aetna Cas. & Sur. Co.,* 98 F.3d 1440,1446 (3d Cir. 1996); *Betz v. Erie Ins. Exch.,* 957 A.2d 1244, 1256 (Pa. Super. Ct. 2008). However, when an insurer denies coverage based on a policy exclusion, the insurer "has asserted an affirmative defense, and accordingly, bears the burden of proving such defense." *McEwing v. Lititz Mut. Ins. Co.,* 77 A.3d 639, 646 (Pa. Super. Ct. 2013) (citations omitted). Policy exclusions are "strictly construed against the insurer and in favor of the insured." *Nationwide Mut. Ins. Co. v. Cosenza,* 258 F.3d 197, 206-7 (3d Cir. 2001). If the carrier shows that an exclusion applies, the insured then bears the burden of proving that an exception to the exclusion is applicable, creating coverage notwithstanding the exclusion. *See, e.g., Consol. Rail Corp. v. ACE Prop. & Cas. Ins. Co.,* 182 A.3d 1011, 1027 (Pa. Super. Ct. 2018); *TIG Specialty Ins. Co. v. Koken,* 855 A.2d 900, 915 (Pa. Commw. 2004); *Jugan v. Econ. Premier Assurance Co.,* 728 F. App'x 86, 90 (3d Cir. 2018) (non-precedential).

Given this legal framework, the threshold burden in this case hinges on whether the policy's collapse coverage operates as an exclusion to coverage or an exception to an exclusion. As discussed above, the policy's "Additional Property coverages" contains a section covering loss from collapse subject to a series of conditions. **Later**, in the "Exclusions" section, the Policy further states: "We do not cover. . . collapse, except as provided by Section 1—Additional Property Coverages—Collapse." Nationwide argues that the Additional Property Coverage section, when read in combination with the Exclusions Section should be considered as an exception to an exclusion, with the burden falling on the insured to establish coverage.

I am not certain that the question of how the burden is allocated has controlling significance. That said, I disagree with Nationwide's reading. The Additional Property Coverages section's language begins with a positive grant of coverage: "We cover direct physical loss to covered property . . . caused by the complete collapse of any building structure or any part of a building structure." It then lists circumstances in which a structure is not considered to be collapsed and limits the covered causes of collapse. This section precedes the Exclusions section and is located in the "Section I—Property Coverages" provision of the policy. I, therefore, read the Additional Property Coverage Section to be a grant of coverage, albeit limited by exclusions, rather than an exception to an exclusion. I read the "Exclusions" section as merely a cross-reference to the Additional Property coverages section. Because Nationwide seeks to disclaim coverage based on a policy exclusion, it bears the burden of proving the applicability of the exclusion as an affirmative defense.

    c. There are Genuine Disputes as to Material Facts

There are genuine disputes of material facts from which a reasonable juror could find for Plaintiff, as follows.

First, the parties dispute the amount that the floor dropped during the incident.[2] Mr. Bitters alleges that the floor collapsed down to the cement slab in the crawl space below, a height he believes to be maybe three to three and a half feet. Bitters Dep. 26:9-14; 27:4-13; Keil Report, ECF 13-10 at 2.[3] Nationwide, on the other hand, characterizes the loss as a "small amount of

---

[2] The parties agree that the floor dropped in elevation some amount and that Mr. Bitters mitigated by shoring up the foundations with additional wood and jacks, thereby remedying the acute loss. Bitters Dep. 29:17-24, 30:1-5; Def.'s Mot. Summ. J., ECF 13-2 at 2.

[3] Nationwide notes that the height of the crawl space appears to be between two and two and a half feet, rendering Bitters' estimate incredible. Def.'s Reply Br. Supp. Def.'s Mot. for Summ. J., ECF 16 at 1. But, Mr. Bitters never claims to have measured the initial drop and "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not

sinking,"[4] Def.'s Mot. for Summ. J., ECF 13 ¶ 32, and Nationwide's litigation expert estimates the floor settled three to five inches.  Halliwell Report, ECF 13-9 at 7.

Nationwide attempts to minimize the disagreement between the parties by arguing it is uncontroverted that the floor fell "somewhere between 3-5 [inches] and 8 [inches]" on the date of the loss, eliminating any dispute.  Def.'s Mot. Summ. J., ECF 13-2 at 3.  As an initial matter, this supposedly "uncontroverted fact" contains a range of distances.  Nationwide takes the upper limit of eight inches from Defendant's expert report, which quotes Mr. Bitters as telling the expert the floor had lowered "approximately 8 inches."  H2M Report, ECF 13-6 at 1.  At his deposition, however, Mr. Bitters was asked if a drop of eight inches was accurate, to which he replied "I mean the floor dropped to the ground.  Eight inches inside? I mean I never measured it."  Bitters Dep. 70:18-24, ECF 16-1.  And elsewhere in the record Mr. Bitters consistently maintains that the floor fell all the way to the concrete slab, a distance that both parties agree exceeds eight inches, and which Mr, Bitters estimated to be a drop of three to three and a half feet.  Bitters Dep. 26:9-14; 27:4-13, ECF 15, Ex.1; Keil Report, ECF 13-10 at 2 ("Mr.  Bitters informed me. . . the bedroom floor. . . collapsed onto the concrete slab in the crawl space.").  Therefore, the distance the floor initially fell – a few inches or all the way to the floor – remains a genuine dispute of material fact.

The dispute as to the height of the drop is material because Bitters is alleging the "falling down" of a part of a building structure, while Nationwide maintains that it merely settled.  Nationwide argues that under no interpretation of the facts could the policy apply, as while it has

---

those of a judge" when ruling on a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

[4]    In its motion for Summary Judgement, Nationwide erroneously cites Plaintiff's Complaint as stating that the floor "sunk."  ECF 13 ¶ 5.  Nowhere in the Complaint is the word sunk to be found; rather, the Complaint consistently alleges collapse.

"settled," "it is uncontroverted that the Property is still standing" and is not in a state of collapse under the policy "even if it shows signs of settling, cracking, shifting, bulging, sagging, bowing, bending, leaning, shrinkage, or expansion." Def.'s Mot. Summ. J., ECF 13 ¶ 29-31. But, the language of the policy is unambiguous in that it specifically provides that collapse need not have involved the entire property and may instead be just a "part of a building." Consequently, the fact that the entire house has remained intact is not fatal to Mr. Bitters' argument.

To the extent that there is ambiguity in the terms defining collapse and "standing" in the policy, the terms are construed in favor of the insured. *Kurach v. Truck Ins. Exch.,* 235 A.3d 1106, 1116 (Pa. 2020). Mr. Bitters alleges that the floor collapsed to the cement foundations, which a reasonable jury could find to be the kind of "falling down" such that part of the building exceeded merely showing signs of settling and was no longer "standing" under the bounds of the policy's definitions.

Second, the parties dispute the habitability of the room. The policy's definition of collapse requires the "result that it cannot be occupied for its intended purpose." Mr. Bitters denies that the room was habitable immediately after the collapse, Pl.'s Resp. in Opp'n Mot. Summ. J., ECF 15 at 5, while Nationwide alleges that the room was and continues to be habitable. Def.'s Mot. Summ. J., ECF 13 ¶ 28. This dispute is material because it directly bears on applicability of the collapse coverage.

Third, the parties dispute the cause of the collapse. Four experts have been retained, two by each side. Both of Bitters' experts attribute the cause of the collapse to insect damage. Blue Bell Report, ECF 13-8 at 2; Keil Report, ECF 13-10 at 4. One of Defendant's experts attributes the loss to insect and water intrusion damage, Halliwell Report, ECF 13-9 at 6-7, while another

7

expert solely blames water damage, H2M Report, ECF 13-6 at 3.  Thus, the parties disagree as to the cause of the collapse, which has implications for coverage under the policy.

### IV.     Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment will be denied.  An appropriate order follows.

 /s/ Gerald Austin McHugh  
United States District Judge
